**Ronnie Dale BLEEKER, Appellant,**

v.

**Idalia VILLARREAL, et al., Appellees.**

**13–94–213–CV.**

Court of Appeals of Texas, Corpus Christi.

Sept. 19, 1996.

Opinion Denying Rehearing Dec. 12, 1996.

Rehearing Overruled Feb. 6, 1997.

Jose E. Garcia, Law Offices of Jose E. Garcia, Francisco J. Rodriguez, Rodriguez, Prunedo, Tovar, Enriquez & Calvillo, McAllen, Richard C. Smith, Richard C. Smith & Associates, Edinburg, ad-litem.

Roger W. Hughes, Craig H. Vittitoe, Adams & Graham, Harlingen, for appellant.

Albert Villegas, Law Offices of Albert Villegas, Rene O. Oliveira, Roerig, Oliveira, &

Fisher, Brownsville, Anthony F. Constant, Corpus Christi, for appellees.

Before YAÑEZ, CHAVEZ and RODRIGUEZ, JJ.

## OPINON

YAÑEZ, Justice.

This case involves personal injury, wrongful death, and gross negligence claims rising from a car crash. Individually and for her husband's estate, Idalia Villarreal and 12 other plaintiffs, including six minors, sued Ronnie Bleeker, State Farm County Mutual Insurance Co., and State Farm Fire and Casualty Co. The jury found that Bleeker's gross negligence proximately caused the crash. Bleeker challenges the denial of his motion to transfer venue, the appointment and payment of the guardians ad litem, the charge's instruction on gross negligence, and an evidentiary ruling. We affirm in part, reverse in part, and remand.

Filiberto Villarreal and the 13 plaintiffs were riding in a pickup truck when they pulled off the road to change drivers. After the Villarreal truck came to a complete stop, Bleeker, who was driving while intoxicated, veered from his lane and collided with the pickup truck. Filiberto Villarreal was killed and the other passengers were injured.

The plaintiffs' original petition included negligence and wrongful death claims against Bleeker and an enforcement action against State Farm County Mutual involving underinsured motorists coverage. State Farm County Mutual filed a petition in interpleader praying to be discharged from liability in exchange for payment of proceeds due under the policy, but the plaintiffs disputed State Farm's calculation of the proceeds. After the plaintiffs' suit was consolidated with State Farm County Mutual's interpleader action, Bleeker moved to sever the two causes but never obtained a hearing or ruling on his motion.

As discovery progressed, it became apparent that the plaintiffs' underinsured motorists policy had been issued by State Farm Fire and Casualty rather than State Farm County Mutual. Consequently, State Farm Fire and Casualty filed an amended petition in interpleader seeking to pay the policy proceeds into the registry of the court in exchange for a discharge of all liability. The plaintiffs then amended their petition to join State Farm Fire and Casualty as a party-defendant and to include a gross negligence claim against Bleeker. Bleeker never objected to the joinder of State Farm Fire and Casualty and never moved to sever the plaintiffs' claims against him from their claims against State Farm Fire and Casualty.

Bleeker moved to transfer venue to Williamson County, where he resided and where the accident had occurred, but the trial court denied this motion. The lawsuit was tried in Hidalgo County before a jury, which answered all questions regarding Bleeker's liability in favor of the plaintiffs. The jury awarded the 13 plaintiffs $100,000 each in punitive damages and varying amounts for actual damages. Claims against State Farm County Mutual and State Farm Fire and Casualty were never submitted to the jury because the court directed a take-nothing verdict on these claims at the close of the plaintiffs' case.

Based on the jury's verdict, the trial court rendered a judgment awarding the following sums as actual damages, punitive damages, and prejudgment interest:

| | |
|---|---|
| Idalia Villarreal, in her individual capacity | $1,363,697.10 |
| Idalia Villarreal, as next friend of Jahaziel Villarreal | $721,235.43 |
| Idalia Villarreal, as next friend of Heriberto F. Villarreal | $753,264.03 |
| Idalia Villarreal, as next friend of Edgar F. Villarreal | $766,769.48 |
| Idalia Villarreal, as next friend of Daniel F. Villarreal | $850,660.28 |
| Idalia Villarreal, as representative of Filiberto Villarreal's estate | $8,428.63 |
| Rosa Ochoa, in her individual capacity | $198,745.10 |
| Rosa Ochoa, as next friend of Abilene Ochoa | $106,483.56 |
| Rosa Ochoa, as next friend of Amalia Misia Ochoa | $106,483.56 |
| Joel Ochoa | $5,935,205.50 |
| Elizabeth Ochoa | $211,478.36 |
| David Ochoa | $138,570.71 |
| Victor Villarreal | $146,506.59 |
| Amalia Villarreal | $248,473.56 |

In a separate order based on a proceeding before the bench to determine fees for the guardians ad litem, the trial court awarded the following amounts:

| | |
|---|---|
| Richard Smith, who represented Edgar, Jahaziel, Heriberto Villarreal | $250,000 |
| Joe Garcia, who represented Daniel Villarreal | $85,000 |
| Frank Rodriguez, who represented Amalia Misia, Abilene, Joel, Elizabeth Ochoa | $30,000 |

By that same order, the court assessed 95% of the costs against Bleeker and 5% of the costs against the State Farm defendants.

Bleeker perfected appeal and requested remand so that the trial court could file findings of fact and conclusions of law in relation to the issue of guardian ad litem fees. We abated the appeal and granted Bleeker's motion for remand. Now that the record has been supplemented to include the trial court's findings and conclusions, we will address the merits of Bleeker's appeal.

## VENUE

■ Under his first and second points of error, Bleeker complains that the trial court erred by denying his motion to transfer venue to Williamson County. Because venue is a creature of legislative grace, the authority to transfer venue from one court to another is entirely statutory. *Polaris Inv. Management Corp. v. Abascal,* 892 S.W.2d 860, 862 (Tex.1995). Accordingly, appellate review of the trial court's venue rulings requires a limited determination of whether the trial court ruling abides by the relevant venue statutes. *Id.* Even the scope of appellate review is specified by statute: "In determining whether venue was or was not proper, the appellate court shall consider the entire record, including the trial on the merits." Tex.Civ.Prac. & Rem.Code Ann. § 15.064(b) (Vernon 1986). If the record contains any probative evidence that venue was proper, even if the preponderance of the evidence is to the contrary, we must uphold the trial court's venue determination. *Bonham State Bank v. Beadle,* 907 S.W.2d 465, 471 (Tex. 1995); *Ruiz v. Conoco, Inc.,* 868 S.W.2d 752, 758 (Tex.1994). If there is no evidence that venue was proper, however, then the trial court's erroneous venue ruling requires automatic reversal and remand for a new trial without the usual harm analysis. Tex.Civ. Prac. & Rem.Code Ann. § 15.064(b); *Wichita County v. Hart,* 917 S.W.2d 779, 781 (Tex. 1996).

■ This standard of review is unique because we evaluate the venue determination in light of evidence that was not before the trial court when it made the venue ruling. *Ruiz,* 868 S.W.2d at 757; *compare* Tex.Civ.Prac. & Rem.Code Ann. § 15.064(b) (appellate court considers "the entire record, including the trial on the merits") *with* Tex.R.Civ.P. 87 1, 3 (trial court's "determination must be made in a reasonable time prior to commencement of the trial" based on allegations in pleadings and "prima facie proof" presented at venue hearing). Accordingly, this unusual standard of review can result in an appellate court reversing a trial court's judgment based on a venue ruling that was correctly decided at the venue hearing. *Ruiz,* 868 S.W.2d at 757.

■ Bleeker complains that the trial court should have granted his motion to transfer because the plaintiffs failed to offer prima facie proof at the venue hearing. Bleeker recites the correct standard of review, but he attacks the trial court's venue ruling as if it were an abuse of discretion in light of the absence of prima facie proof from the venue hearing.

As we have discussed, the record as it stood on the date of the venue hearing does not frame our review of the trial court's venue decision. Instead, we examine the entire record for any evidence to support the trial court's venue ruling. *Id.* at 758. We affirm or reverse the judgment based on this standard regardless of whether the trial court's ruling was correct as viewed from the perspective of the venue hearing. *Id.* at 757. To limit the possibility that venue will be improperly established through pretrial gamesmanship, our review considers only whether the venue ruling was ultimately vindicated by the fully developed record. *See Wilson v. Texas Parks & Wildlife Dept.,* 886 S.W.2d 259, 261–62 n. 3 (Tex.1994). In defense of this often-criticized standard of review, the Texas Supreme Court has noted that the prospect of an automatic reversal is sufficient deterrent against such gamesmanship. *Id.* (citing *Maranatha Temple, Inc. v. Enterprise Prod. Co.,* 833 S.W.2d 736, 741 (Tex.App.—Houston [1st Dist.] 1992, writ denied)).

■ If Bleeker had not denied the venue facts in the plaintiffs' petition, then the trial court would have taken those facts as true and sufficient to establish venue in Hidalgo County. Tex.R.Civ.P. 87 3(a). In this case, however, Bleeker specifically denied that the State Farm defendants had any Hidalgo

County agents handling the plaintiffs' underinsured motorist claim rising from the crash.[1] Bleeker also denied that the plaintiffs had a cause of action against State Farm. Although the existence of a cause of action is immune from challenge at a venue hearing, *Id.*, any determination that the State Farm defendants did not have an agency in Hidalgo County would disrupt venue in that county. *See* Act of June 3, 1987, 70th Leg., 1st C.S., ch. 4, § 1, 1987 Tex.Gen.Laws 52, 53, *repealed by* Act of May 8, 1995, 74th Leg., R.S., ch. 138, § 10, 1995 Tex.Gen.Laws 978, 981 (under former law, foreign corporation could be sued in any county in which it had an agency); *see also* TEX.CIV.PRAC. & REM. CODE ANN. § 15.001 historical note (Vernon Supp.1996) (Act of May 8, 1995, 74th Leg., R.S., ch. 138, § 11, 1995 Tex.Gen.Laws 978, 981–82 provides that suits commenced before September 1, 1995, are governed by former law).

The plaintiffs' response to the motion to transfer venue did not comply with Rule 87: neither an affidavit setting forth venue facts nor any duly proved attachments accompanied the response. TEX.R.CIV.P. 87 3(a). Conversely, Bleeker's motion to transfer venue properly set forth all the facts necessary to show that Williamson County was a permissible venue for the litigation. *See id.* 2(a), 3(a). *But see Watson v. City of Odessa*, 893 S.W.2d 197, 199 (Tex.App.—El Paso 1995, writ denied) (holding that motion to transfer also "must show" either that county where action is pending is improper or that venue is mandatory in another county).

The hearing on the motion to transfer venue was scheduled for 8:30 in the morning of October 25, 1993. The transcript in this case shows that at 9:00 of the same morning, State Farm Fire and Casualty filed its supplemental responses to the plaintiffs' requests for admissions. Among these admissions, State Farm Fire and Casualty conceded that it had several local recording agents and a claims service office in Hidalgo County. By its initial set of admissions, which were already on file with the trial court at the time of the venue hearing, State Farm Fire and Casualty had admitted that it was a foreign corporation. The plaintiffs' pleadings, combined with admissions that State Farm Fire and Casualty is a foreign corporation with agents and a claims office in Hidalgo County, support the venue ruling. *See* Act of June 3, 1987, 1987 Tex.Gen.Laws 52, 53 (repealed 1995) (foreign corporation may be sued in any county where it has an agency); *Ruiz*, 868 S.W.2d at 759; *Reliance Ins. Co. v. Falknor*, 492 S.W.2d 721, 722–23 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.) (local recording agent creates agency for venue purposes); *see also* TEX.INS.CODE ANN. art. 21.14 § 2(a)(1) (Vernon Supp.1996) (local recording agent has authority to bind insurance company).

Our review need not resolve whether the court correctly denied the motion to transfer venue in light of the plaintiffs' response to the motion and the prima facie proof offered at the hearing. We need only determine whether the venue ruling is supported by some evidence, even if that evidence was not made part of the record until after the venue hearing. In this case, evidence necessary to sustain venue was omitted from the plaintiffs' response to Bleeker's motion to transfer venue. Nevertheless, the essential supporting evidence was filed before the trial court ruled on the venue issue. *Cf.* TEX.R.CIV.P. 87 3(d) (trial court may direct parties to make further proof). Because we judge the venue ruling in light of the entire record, deficiencies in the plaintiffs' prima facie proof at the hearing do not present automatic grounds for disturbing the venue ruling.

◾ As a further attack on the trial court's venue ruling, Bleeker argues that he cannot be bound by the admissions of State Farm Fire and Casualty. Generally, Bleeker is correct; matters admitted in response to requests for admissions are conclusively established only against the party making the admission. *Cartwright v. MBank Corpus Christi, N.A.*, 865 S.W.2d 546, 551 (Tex. App.—Corpus Christi 1993, writ denied) (citing TEX.R.CIV.P. 169(2)).

---

1. Bleeker denied that State Farm had agents in Hidalgo County handling the plaintiffs' claim, but he never specifically denied that State Farm Fire and Casualty had an agency in Hidalgo County. Because we resolve Bleeker's point of error on other grounds, we do not reach the issue of whether Bleeker's denial was sufficient to raise the plaintiffs' duty to offer prima facie proof.

In this case, the admissions conclusively establish venue facts only against State Farm Fire and Casualty. *See* TEX.R.CIV.P. 88 (trial court may consider admissions in making venue determination). The admissions merely support the trial court's determination that venue is proper in the underinsured motorist coverage enforcement action against State Farm Fire and Casualty. *But see* TEX.INS.CODE ANN. art. 5.06–1(8) (Vernon Supp.1996) (mandatory venue provisions for underinsured motorist coverage enforcement actions commenced from August 28, 1995). These admissions did not establish venue in the action against Bleeker; rather, the operation of former section 15.061 established Hidalgo County as a permissive venue for the suit against Bleeker. Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex.Gen.Laws 3242, 3249, *repealed by* Act of May 8, 1995, 74th Leg., R.S., ch. 138, § 10, 1995 Tex.Gen.Laws 978, 981 (now see TEX. CIV.PRAC. & REM.CODE ANN. § 15.005 (Vernon Supp.1996)). To defeat venue under section 15.061, Bleeker had to show that venue was not permissible for any defendant, that a mandatory provision compelled some other venue, or that the codefendant was improperly joined. *See id.* Bleeker was not bound by State Farm Fire and Casualty's admissions; Bleeker could have attempted to disprove that his codefendant was a foreign corporation with an agency in Hidalgo County, but he did not. Similarly, Bleeker offered no argument relating to any mandatory venue provision. Accordingly, the only question remaining is whether Bleeker properly challenged the joinder of State Farm Fire and Casualty.

State Farm's interpleader action was consolidated with plaintiffs' claims against Bleeker pursuant to plaintiffs' motion to consolidate. The consolidation order reflects that the trial court conducted a hearing on this matter, but the record now before us does not contain a statement of facts from that hearing. We must presume that a record of this hearing would have supported the trial court's judgment. *Cantu v. Butron,* 905 S.W.2d 718, 720 (Tex.App.—Corpus Christi 1995, writ denied) (citing *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 689 (Tex.1990) and TEX.R.APP.P. 50(d)). Moreover, Bleeker neither objected to the joinder of State Farm Fire and Casualty nor requested a severance from the claims involving State Farm Fire and Casualty. Consequently, Bleeker cannot now complain that State Farm Fire and Casualty was improperly joined in this lawsuit. *Rosales v. H.E. Butt Grocery Co.,* 905 S.W.2d 745, 751 (Tex.App.—San Antonio 1995, writ denied) (citing *Barton v. Farmers' State Bank,* 276 S.W. 177, 179 (Tex.1925) for rule that policy disfavoring multiple lawsuits subjects misjoinder issues to waiver).

In summary, our review of the entire record reveals some evidence that venue was proper for Bleeker's codefendant, State Farm Fire and Casualty. Bleeker neither requested a severance from that codefendant nor objected to the joinder. In fact, the only pretrial motion in which Bleeker challenged claims against the State Farm defendants was his motion to transfer venue, which is not a proper motion by which to question a claim. TEX.R.CIV.P. 87(3)(a) ("no party shall ever be required for venue purposes to support by prima facie proof the existence of a cause of action"). Because venue was proper for claims against State Farm Fire and Casualty and because Bleeker failed to attack the joinder of those claims, he cannot complain that venue was improper for claims against him. We overrule Bleeker's first two points of error.

## GUARDIAN AD LITEM FEES

By his third, fourth, and fifth points of error, Bleeker attacks the trial court's appointment of the guardians ad litem and the court's assessment of their fees. Before we reach the issue of fees, we will address whether the trial court erred by appointing guardians ad litem.

■ As a threshold issue, the parties dispute whether Frank Rodriguez was appointed to represent either Joel or Elizabeth Ochoa, who were no longer minors by the time the case came to trial. The court's findings of fact recite that "Frank J. Rodriguez was appointed as guardian ad litem to represent the interests of Amalia Misia Ochoa, Abilene Ochoa, Joel Ochoa and Elizabeth Ochoa." However, the trial court's findings of fact and conclusions of law must be construed together and in the greatest possi-

ble harmony with judgment. *Brown v. Frontier Theatres, Inc.*, 369 S.W.2d 299, 301 (Tex.1963); *Cantu v. Butron*, 921 S.W.2d 344, 351 (Tex.App.—Corpus Christi 1996, writ requested). Accordingly, we must also consider the findings regarding what amounts were awarded to Amalia Misia and Abilene as well as the conclusion of law approving percentage fees of those awards. Construing the findings together with the conclusions of law, it is apparent that Rodriguez's fee does not reflect any amount for representing Joel or Elizabeth Ochoa. Accordingly, the finding that Rodriguez was appointed to represent Joel and Elizabeth Ochoa is unnecessary to our disposition of this suit and need not be further addressed. Tex.R.App.P. 90(a).

■ In regard to the other wards, we must consider that this suit involved two groups of defendants. The claims against the State Farm defendants were resolved by payment of limited funds that were clearly insufficient to meet the total claims of the 13 plaintiffs. Each of the 13 plaintiffs brought different claims against Bleeker. Some plaintiffs' claims were only for personal injuries, but other plaintiffs brought claims for personal injuries combined with claims for the wrongful death of their father or husband. Each plaintiff's personal injury claims differed according to his or her injuries. Under these circumstances, the trial court did not abuse its discretion by appointing guardians ad litem to represent the minors' interests. *Gallegos v. Clegg*, 417 S.W.2d 347, 351–53 (Tex.Civ.App.—Corpus Christi 1967, writ ref'd n.r.e.). We therefore overrule Bleeker's third point of error, which concerns the trial court's decision to appoint the guardians ad litem.

■ By points of error four and five, Bleeker challenges the amounts of the fees awarded to the guardians ad litem. Rule 173 of the Texas Rules of Civil Procedure authorizes the court to award an ad litem a reasonable fee for his or her services. Tex.R.Civ.P. 173. The amount of compensation awarded to the ad litem lies within the sound discretion of the trial court. *Simon v. York Crane & Rigging Co.*, 739 S.W.2d 793, 794 (Tex. 1987); *Rio Grande Valley Gas Co. v. Lopez*,

907 S.W.2d 622, 624 (Tex.App.—Corpus Christi 1995, no writ). A reviewing court will not overturn a fee award absent evidence showing a clear abuse of discretion. *Brownsville–Valley Regional Medical Ctr., Inc. v. Gamez*, 894 S.W.2d 753, 756 (Tex. 1995).

■ In this case, the findings of fact and conclusions of law show that the trial court based part of the fees it awarded on future services to be performed by the guardians ad litem. Once the litigation was completed, however, there was no remaining conflict between the interests of parents and the interests of their minor children. *See id.* at 755–56. A trial court abuses its discretion by awarding ad litem fees for services to be performed after the resolution of the conflict of interest that gave rise to the appointment. *Frank A. Smith Sales, Inc. v. Flores*, 907 S.W.2d 487, 488 (Tex.1995). Accordingly, we sustain Bleeker's fourth and fifth points of error. Because the trial court did not specify what portion of the award was compensation for future services, we remand this issue to the trial court for reconsideration. *See id.; Rio Grande Valley Gas*, 907 S.W.2d at 625.

## GROSS NEGLIGENCE INSTRUCTIONS

By his sixth point of error, Bleeker complains that the trial court erred by refusing to give his requested instructions on gross negligence. The gross negligence issue, which was predicated upon an affirmative finding of negligence, was submitted to the jury as follows:

Was the negligence of RONNIE DALE BLEEKER gross negligence?

"Gross negligence" means such an entire want of care as to establish that the act or omission in question was the result of actual conscious indifference to the rights, welfare, or safety of the persons affected by it.

ANSWER: "YES" or "NO"

ANSWER: _____

The trial court refused Bleeker's requests to include the following instructions:

## REQUESTED CHARGE NO. 1

Defendant's conduct is not gross negligence unless Defendant's conduct created an extreme risk of harm and Defendant, Bleeker, was aware of the extreme risk of harm.

. . . . .

## REQUESTED CHARGE NO. 2

"Gross negligence" [means] more than momentary thoughtlessness, inadvertence, or error of judgment.

We will address the trial court's refusal of the two proposed instructions separately.

Bleeker's "REQUESTED CHARGE NO. 1" is based on the Texas Supreme Court's definition of gross negligence from *Wal–Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 326 (Tex.1993). In its discussion of the parameters to a legal sufficiency review of a gross negligence finding, the *Wal–Mart* court offered the following definition:

> We reaffirm that a gross negligence finding may be upheld on appeal only if there is some evidence that a) the defendant's conduct created an extreme risk of harm and, b) the defendant was aware of the extreme risk of harm. With this definition in mind, we turn to the issue of whether any evidence supports the jury's finding of gross negligence in this case.

*Id.* Less than a year after the *Wal–Mart* court recast the definition of gross negligence, the supreme court recharacterized the definition's two components:

> In summary, the definition of gross negligence includes two elements:
> (1) viewed objectively from the standpoint of the actor, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others.

*Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex.1994).

We have said that the detailed instructions set out in *Moriel* may be required in gross negligence suits that come to trial in the wake of that opinion. *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 907 S.W.2d 535, 560 (Tex.App.—Corpus Christi 1994, writ granted). Nevertheless, we have not interpreted this mandate to require automatic reversal in cases where the charge was acceptable at time of trial but would be considered inadequate in light of *Moriel*. *Id.* Moreover, we have never interpreted the *Wal–Mart* definition of gross negligence as an instruction required to be incorporated into the court's charge. By his sixth point of error, Bleeker asks that we impose such requirements in the case under review, which was tried in the interval between *Wal–Mart* and *Moriel*. We need not reach this issue, however, because our examination of the record reveals that the evidence offered at trial does not warrant submission of Bleeker's "REQUESTED CHARGE NO. 1."

 The trial court must submit instructions and definitions that are proper to enable the jury to render a verdict. TEX. R.CIV.P. 277; *Texas Dept. of Human Servs. v. Hinds*, 904 S.W.2d 629, 637 (Tex.1995). However, the trial court must submit only those instructions and definitions that are raised by the written pleadings and supported by evidence. TEX.R.CIV.P. 278; *see Rivera v. Herndon Marine Prods., Inc.*, 895 S.W.2d 430, 433 (Tex.App.—Corpus Christi 1995, writ denied). The court need not submit an issue to the jury if the matter is conclusively resolved under the evidence. *Wyndham Hotel Co. v. Self*, 893 S.W.2d 630, 635–36 (Tex.App.—Corpus Christi 1994, writ denied); *Gilgon, Inc. v. Hart*, 893 S.W.2d 562, 567–69 (Tex.App.—Corpus Christi 1994, writ denied).

In the case under review, Bleeker's own testimony establishes the following facts:

● Bleeker admitted knowing that he would be affected by any amount of alcohol.

● Bleeker admitted that he had been drinking on the night of the accident.

● Bleeker admitted that he caused the accident.

● Bleeker admitted that his drinking on the night of the accident was a factor in causing the accident.

● Bleeker admitted that criminal proceedings rising from the accident were resolved by his admission that he was driving while intoxicated on the night of the accident.

● Bleeker admitted that he cannot recall events immediately preceding the accident and that he fell asleep or otherwise lost consciousness while he was driving.

● Bleeker admitted that he is affected by alcohol and that the alcohol he drank the night of the accident may have caused him to fall asleep at the wheel.

● Bleeker admitted knowing that drinking and then driving is wrong.

● Bleeker admitted that he continues to drink alcohol in violation of the terms of his probation and that he has lied to his probation officer about this fact.

The record does not contain any contrary evidence to suggest that driving while intoxicated creates something less than an extreme risk of harm.

Both at trial and again before this court, Bleeker argued that the parties vigorously disputed how many beers he drank and whether he passed out or merely fell asleep. However, these fact issues are immaterial in light of the other evidence that was undisputed. Although Bleeker denied that he had more than three or four beers, he did not contest evidence that he drank enough to become intoxicated beyond the legal limit. In light of uncontroverted evidence that he was too intoxicated to drive at the time of the accident, the number of beers he drank is irrelevant. Similarly, it does not matter whether the alcohol caused Bleeker to pass out or merely caused him to fall asleep. In either case, Bleeker drank so much that he became intoxicated beyond the legal limit and then lost consciousness as he was driving home.

■ We must compare the evidence of record against Bleeker's "REQUESTED CHARGE NO. 1":

Defendant's conduct is not gross negligence unless Defendant's conduct created an extreme risk of harm and Defendant, Bleeker, was aware of the extreme risk of harm.

The aspect of this proposed instruction concerning the defendant's awareness of the risk has been a cornerstone of the common-law definition of gross negligence in Texas for over 115 years. *Moriel,* 879 S.W.2d at 19–21; *cf. Southern Cotton Press & Mfg. Co. v. Bradley,* 52 Tex. 587, 600 (1880) ("Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise a presumption of a conscious indifference to consequences."). Bleeker's complaint is without merit because the court's definition of gross negligence required the jury to find that he acted with "actual conscious indifference," which incorporates the awareness element. *See Moriel,* 879 S.W.2d at 21 ("Gross negligence, then, differs from ordinary negligence with respect to both elements—the defendant must be 'consciously indifferent' and his or her conduct must 'create an extreme degree of risk.' ").

The court's definition of gross negligence incorporated the subjective "awareness" aspect of Bleeker's proposed instruction, but it is less clear that it included the objective "extreme risk" issue. *See id.* at 19–22 (tracing the subjective component of gross negligence back over 100 years to the common-law definition but tracing the objective component back only to *Wal–Mart* and *Williams v. Steves Indus., Inc.,* 699 S.W.2d 570, 572–73 (Tex.1985)). However, we need not resolve whether the proposed instruction's emphasis on creation of an extreme risk represents a burden that is not encompassed in the traditional gross negligence definition. To whatever extent Bleeker's instruction may include an added burden of proof, the instruction was unnecessary because evidence that Bleeker created an extreme risk was undisputed. *See Wyndham Hotel,* 893 S.W.2d at 635–36. The trial court did not err by refusing Bleeker's "REQUESTED CHARGE NO. 1."

■ As we discussed above, the trial court's charge to the jury contained the following definition of gross negligence:

"Gross negligence" means such an entire want of care as to establish that the act or omission in question was the result of actual conscious indifference to the rights, welfare, or safety of the persons affected by it.

By his "REQUESTED CHARGE NO. 2," Bleeker sought to have the jury provided with the following additional definition:

"Gross negligence" [means] more than momentary thoughtlessness, inadvertence, or error of judgment.

Because this suit was filed after September 1, 1987, but before September 1, 1995, the applicable statutory definition of gross negligence includes the language that Bleeker requested:

"Gross negligence" means more than momentary thoughtlessness, inadvertence, or error of judgment. It means such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, welfare, or safety of the person affected.

Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 2.12, 1987 Tex.Gen.Laws 44, *repealed by,* Act of April 11, 1995, 74th Leg., R.S., ch. 19, § 1, 1995 Tex.Gen.Laws 109. However, the common-law definition is slightly different and does not include the specific language that Bleeker requested:

Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it.

*Universal Servs. Co. v. Ung,* 904 S.W.2d 638, 640 (Tex.1995) (citing *Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 920 (Tex.1981)).

Although the statutory definition is applicable to the case under review, the Texas Supreme Court has recognized that the statute codified the common-law definition without any elemental change. *Moriel,* 879 S.W.2d at 20. Accordingly, "the language defining gross negligence to be applied in a particular case should not turn on the applicability of the Act." *Id.*

The definition at issue combines language from the statute with language from the common-law definition. Significantly, the definition incorporates both noteworthy statutory modifications: the use of the words "establish" and "actual." *See id.* (the words "establish" and "actual" are the key differ-ences between the common-law and statutory definitions). Consequently, Bleeker's "REQUESTED CHARGE NO. 2" amounts to no more than a "different shade" of the issue submitted by the trial court. *See* TEX. R.APP.P. 278 ("A judgment shall not be reversed because of the failure to submit other and various phases or different shades of the same question."). Accordingly, we overrule Bleeker's sixth point of error.

## EVIDENCE OF INSURANCE

 When this case went to trial, the plaintiffs' claims against the State Farm defendants were limited to a dispute whether State Farm owed $300,000 or only the $260,000 that it had already paid. Bleeker characterizes this issue as a question of law that could have been resolved by the court's determination of whether the policy would be governed by Texas or Illinois law. Although the record does not reflect why this issue was not resolved before the case went to trial, State Farm appeared at trial as a party-defendant because the issue remained pending. To prevent the jury from drawing mistaken conclusions about State Farm's role in the case, Bleeker sought to offer evidence that State Farm insured the plaintiffs and did not insure him. By his final point of error, Bleeker complains that the trial court erred by refusing to allow him to offer such evidence.

 The trial court is vested with the authority to determine whether evidence should be admitted or excluded. TEX.R.CIV. EVID. 104(a); *Cecil v. T.M.E. Invs., Inc.,* 893 S.W.2d 38, 43 (Tex.App.—Corpus Christi 1994, no writ). This decision lies within the sound discretion of the trial court and will not be disturbed absent a demonstration that the court abused its discretion. *Cecil,* 893 S.W.2d at 43; *Steenbergen v. Ford Motor Co.,* 814 S.W.2d 755, 760 (Tex.App.—Dallas 1991, writ denied), *cert. denied,* 506 U.S. 831, 113 S.Ct. 97, 121 L.Ed.2d 58 (1992). To show that the trial court abused its discretion, Bleeker must demonstrate that the court excluded the evidence arbitrarily and without reference to guiding principles. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,*

476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). Furthermore, we cannot reverse a judgment on the improvident exclusion of evidence unless the evidence was so critical that its exclusion probably resulted in the rendition of an incorrect judgment. Tex. R.App.P. 81(b)(1); *Gilgon*, 893 S.W.2d at 569.

■ Generally, Rule 411 is the chief principle that should guide the court's determinations regarding evidence of insurance:

> Evidence that a person was or was not insured against liability is not admissible upon the issue of whether he acted negligently or otherwise wrongfully.

Tex.R.Civ.Evid. 411. Under limited circumstances, a party may inform the jury of its own insurance status to clarify certain misconceptions that the jury might have formed. *See University of Tex. v. Hinton*, 822 S.W.2d 197, 201 (Tex.App.—Austin 1991, no writ). In most cases, however, the general prohibition against admitting evidence of insurance operates to preclude defendants from showing that they are uninsured. *Rojas v. Vuocolo*, 177 S.W.2d 962, 964 (Tex.1944); *cf.* Tex. R.Civ.Evid. 411 ("Evidence that a person was *or was not* insured against liability is not admissible") (emphasis added).

Even if we were to conclude that this case presents the rare situation in which a party may inform the jury of its insurance status, we would nevertheless overrule Bleeker's point of error. During voir dire before the entire venire, Bleeker's counsel was allowed to clarify the State Farm defendants' role in the case:

> [O]ne of the things I'd like to make clear from the very beginning is my client is Ronnie Bleeker. He is not insured by State Farm. I have not been hired by State Farm. State Farm is a totally different defendant in this case, from Mr. Bleeker. State Farm provided insurance to certain and all of the plaintiffs in this case. *They did not insure Mr. Bleeker.*

Moreover, the trial court specifically instructed the jurors that they should not consider or speculate whether any of the parties were covered by insurance. Under these circumstances, the trial court's decision to exclude evidence that State Farm insured the plaintiffs and did not insure Bleeker probably did not cause the rendition of an improper judgment. Accordingly, we overrule Bleeker's final point of error. Tex.R.App.P. 81(b)(1).

## CONCLUSION

We AFFIRM the judgment in favor of the plaintiffs, but we REVERSE the order awarding fees to the guardians ad litem for future services and REMAND that issue to the trial court.

## OPINION ON MOTION
## FOR REHEARING

We overrule Bleeker's motion for rehearing and for rehearing en banc, but we will briefly address Bleeker's venue arguments to clarify our decision.

Bleeker contends that our opinion improperly encumbered him with the burden of proof on the venue issue. Before the trial court, the burden of proof is placed on "the party pleading the venue fact" to "make prima facie proof of that venue fact" when it has been specifically denied. Tex.R.Civ.P. 87.3(a). On appeal, however, we search "the entire record, including the trial on the merits." Tex.Civ.Prac. & Rem.Code Ann. § 15.064(b) (Vernon 1986). If we find "any probative evidence ... that venue was proper, we must uphold the trial court's determination on the matter of venue." *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 471 (Tex.1995). Under this standard of review, we uphold the trial court's venue determination if it is supported by any evidence; it does not matter who introduced that evidence.

■ When this suit was commenced, the venue laws provided as follows:

> Foreign corporations, private or public, joint-stock companies or associations, not incorporated by the laws of this state, and doing business in this state, may be sued in any county in which all or part of the cause of action accrued, or in any county in which the company may have an agency or representative, or in any county in which the principal office of the company may be situated, or, if the defendant has no agent or representative in this state, then in the

county in which the plaintiffs or either of them reside.

Act of June 3, 1987, 70th Leg., 1st C.S., ch. 4, § 1, 1987 Tex.Gen.Laws 52, 53, *repealed by* Act of May 8, 1995, 74th Leg., R.S., ch. 138, § 10, 1995 Tex.Gen.Laws 978, 981. In this case, State Farm Fire and Casualty filed admissions (1) that it was "incorporated under the laws of the State of Illinois," (2) that it was "doing business in the State of Texas," and (3) that it had local recording agents "located in McAllen, Hidalgo County, Texas." As a matter of law, local recording agents represent the insurance company and have authority to bind the insurance company. TEX.INS.CODE ANN. art. 21.14 § 2(a)(1) (Vernon Supp.1996). Agents with discretion to bind their company qualify as an "agency or representative" for the purposes of venue in suits against foreign corporations. *See Ruiz v. Conoco, Inc.,* 868 S.W.2d 752, 758 (Tex. 1994); *Reliance Ins. Co. v. Falknor,* 492 S.W.2d 721, 722–23 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.). Thus, State Farm Fire and Casualty's admissions are some probative evidence that Hidalgo County was a proper venue for claims against State Farm Fire and Casualty.

 The venue rules further provided:

When two or more parties are joined as defendants in the same action or two or more claims or causes of action are properly joined in one action and the court has venue of an action or claim against any one defendant, the court also has venue of all claims or actions against all defendants unless one or more of the claims or causes of action is governed by one of the [mandatory venue provisions] requiring transfer of the claim or cause of action, on proper objection, to the mandatory county.

Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex.Gen.Laws 3242, 3249, *repealed by* Act of May 8, 1995, 74th Leg., R.S., ch. 138, § 10, 1995 Tex.Gen.Laws 978, 981. Under this provision, venue may be challenged on grounds that the defendants or claims are improperly joined, the court does not have venue over any defendant, or a mandatory provision requires transfer. *Id.* No mandatory provision governs this case.

Regarding the requirement that multiple defendants or claims must be "properly joined," the plaintiffs had no burden to offer prima facie proof that joinder was proper because Bleeker never specifically denied any venue fact relevant to the issue of joinder. *See Gonzalez v. Nielson,* 770 S.W.2d 99, 102 (Tex.App.—Corpus Christi 1989, writ denied) (all allegations are accepted as true except particular facts specifically denied in motion to transfer). In his motion to transfer, Bleeker asserted that the plaintiffs' cause of action "against State Farm Fire and Casualty does not exist," but this argument does not raise any duty to offer prima facie proof. TEX.R.CIV.P. 87.3(a) ("no party shall ever be required for venue purposes to support by prima facie proof the existence of a cause of action"). Similarly, the argument in Bleeker's motion to transfer regarding the plaintiffs' "bootstrapping" of claims against the various defendants is not a specific denial of any particular venue fact. *See Maranatha Temple, Inc. v. Enterprise Prod. Co.,* 833 S.W.2d 736, 741 (Tex.App.—Houston [1st Dist.] 1992, writ denied) ("'specific denial' of a venue fact requires that the fact *itself* be denied"). Moreover, Bleeker neither objected to the joinder of State Farm Fire and Casualty nor requested a severance from the claims against that codefendant. Having failed to obtain a ruling from the trial court on any allegation of misjoinder, Bleeker cannot pursue this argument on appeal. TEX. R.APP.P. 52(a).

 Regarding the issue of whether the trial court had "venue of an action or claim against any one defendant," Bleeker argues that we impermissibly placed the burden of proof on him. This misconstrues our decision. We merely searched the entire record for any evidence that would support the trial court's determination that Hidalgo County was a proper venue for the claims against State Farm Fire and Casualty. This proof was provided by State Farm Fire and Casualty's admissions. In the absence of this evidence, we would have reversed the trial court's judgment and remanded for a new trial. *See WTFO, Inc. v. Braithwaite,* 899 S.W.2d 709, 718 (Tex.App.—Dallas 1995, no writ). Similarly, we would have reversed the trial court's judgment if Bleeker had intro-

duced contrary evidence that destroyed the probative value of the proof establishing Hidalgo County as a proper venue for claims against State Farm Fire and Casualty. *See Ruiz*, 868 S.W.2d at 757. We did not shift the burden of proof by merely acknowledging that Bleeker could have offered contrary evidence under *Ruiz* to avoid the effect of State Farm Fire and Casualty's admissions. *See id.*

Moreover, Bleeker's motion to transfer contained only one specific denial that might arguably raise the plaintiffs' burden to offer prima facie proof:

> RONNIE DALE BLEEKER specifically denies the fact ... that venue is proper in Hidalgo County, Texas, because Hidalgo County is the county in which [State Farm Fire and Casualty] does business and has agents handling this claim....

This denial does not rebut the specific fact necessary to establish venue against a foreign corporation. *See* Act of June 3, 1987, 70th Leg., 1st C.S., ch. 4, § 1, 1987 Tex.Gen. Laws 52, 53 (repealed 1995) (venue is proper in "any county in which the company may have an agency or representative" without regard to whether the agent is handling the claim at issue); *cf. Maranatha Temple*, 833 S.W.2d at 741 (discussing proper method of specifically denying facts necessary to venue in suit against foreign corporation). However, even if we consider Bleeker's denial sufficiently specific to raise the plaintiffs' duty to offer prima facie proof, the record contains all the evidence necessary to sustain the trial court's venue decision. If no mandatory venue provision governs a suit joining multiple defendants, then evidence establishing venue for the "claim against any one defendant" will suffice as a response to another defendant's motion to transfer. *See* Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex.Gen.Laws 3242, 3249 (repealed 1995); *see also WTFO*, 899 S.W.2d at 718 (plaintiff WFTO would have properly responded to defendant Braithwaite's motion to transfer by offering prima facie proof that venue was proper for claims against codefendant Poort). Thus, venue for the claims against State Farm Fire and Casualty was established by its admissions and venue for the claims against Bleeker was established under the prevailing venue rules without the need of any additional proof. *See* Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex.Gen.Laws 3242, 3249 (repealed 1995).

Bleeker further argues that we improperly used admissions by State Farm Fire and Casualty to establish venue for claims against him. Again, Bleeker misconstrues our opinion. We looked to State Farm Fire and Casualty's admissions as some evidence of the facts necessary to establish that venue was proper for the claims against State Farm Fire and Casualty. Bleeker cites several cases to support his argument that we improperly used a codefendant's admissions to establish venue against him. *E.g., Pearson v. Jones Co., Ltd.*, 898 S.W.2d 329, 331–32 (Tex.App.—Eastland 1994, no writ) (defendant's waiver of right to challenge venue did not waive codefendant's objections to venue); *Morehouse v. Brink*, 647 S.W.2d 712, 714–15 (Tex.App.—Corpus Christi 1982, no writ) (plaintiff failed to prove cause of action in response to plea of privilege); *Stanford v. Dairy Queen Prods.*, 623 S.W.2d 797, 804 (Tex.App.—Austin 1981, writ ref'd n.r.e.) (defendant's waiver of right to challenge venue did not waive codefendant's plea of privilege); *Rubenstein Foods, Inc. v. Winter Garden, Inc.*, 589 S.W.2d 511, 512–14 (Tex.Civ.App.—Corpus Christi 1979, no writ) (where defendant did not testify, defendant's stipulation that venue was proper did not bind codefendant); *Lasorsa v. Burr*, 516 S.W.2d 265, 267–68 (Tex.Civ.App.—Houston [14th Dist.] 1974, no writ) (defendant's stipulation that venue was proper did not bind codefendant, but defendant's deposition testimony regarding facts underlying that stipulation established venue for claims against codefendant). Except for *Pearson*, these cases were all decided under former venue rules that allowed defendants a plea of privilege to be sued in their venue of residence and required plaintiffs to offer factually sufficient proof of their entire case in order to establish venue. Moreover, these cases are distinguishable because the codefendants either waived their right to challenge venue or stipulated that venue was proper without offering evidence of facts underlying the stipulation. Waivers and stipulations might conclusively resolve

the venue issue for a defendant, but neither a waiver nor a broad stipulation without some proof of the underlying facts is evidence. *See WTFO,* 899 S.W.2d at 718.

In the case under review, however, venue was not established by deemed admissions, waiver, or an unsupported stipulation that venue was proper. Instead, State Farm Fire and Casualty filed admissions conceding all the specific facts necessary to establish that the claims against it could be tried in Hidalgo County. These admissions were signed under penalty of sanctions for improper admissions. Tex.R.Civ.P. 215(4). The facts admitted were all within the knowledge of State Farm Fire and Casualty and were sufficient to resolve the issue of whether "the court has venue of an action or claim against" State Farm Fire and Casualty. Because the only venue facts even arguably denied were facts underlying the ruling that Hidalgo County was a proper venue for claims against State Farm Fire and Casualty, the record contains some evidence of every fact necessary to uphold the venue determination. The plaintiffs need not offer further proof that State Farm Fire and Casualty is a foreign corporation doing business in Texas with agents in Hidalgo County when State Farm deliberately removed each of these specific facts from controversy and the record contains no contrary evidence. *See Red Top Taxi Co. v. Snow,* 452 S.W.2d 772, 774 (Tex.Civ.App.—Corpus Christi 1970, no writ).

Finally, Bleeker contends we failed to consider his argument that the plaintiffs' claim against State Farm Fire and Casualty was not a bona fide cause of action. We considered this argument, but the record did not substantiate Bleeker's contention. To the contrary, the record showed that the claims against State Farm Fire and Casualty included a dispute as to whether the payment due under the underinsured motorists policy was $300,000 or $260,000. The record further demonstrated that this dispute was never resolved by the pretrial motions. In his reply brief before this court, Bleeker even conceded that this $40,000 dispute remained unresolved as the trial date approached. Moreover, Bleeker did not offer any briefing to address why this dispute was so ground-less that it should not be considered a bona fide claim. We did not neglect to consider Bleeker's argument that the plaintiffs failed to bring a bona fide claim against State Farm Fire and Casualty; we rejected that argument based on the record before us.

Having considered all the issues raised in his motion, we overrule Bleeker's motion for rehearing and for rehearing en banc.